UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) No. 20-cr-10220-FDS |
| KENJI INGRAM, | ) |
| | ) |
| Defendant | ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this memorandum in support of its sentencing recommendation for Defendant Kenji Ingram, a convicted felon with an extensive criminal record containing over a dozen convictions and numerous other arrests involving violence, firearms, and drugs, who possessed a loaded firearm in a busy shopping center in Boston while (1) on probation for shooting multiple rounds into his ex-girlfriend's residence (for which he had just recently served multiple years in prison) and (2) on pretrial release for state firearm and drug charges. On May 2, 2023, Defendant pled guilty to felon in possession of firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

The government hereby recommends a sentence of incarceration of 30 months followed by three years of supervised release. A substantial period of incarceration is warranted given the nature of the offense, Defendant's extensive criminal history, his continued dangerousness, and his unwillingness to be deterred and/or conform his behavior to the law. Despite multiple state terms of incarceration and periods of court-ordered supervision and probation, Defendant has consistently shown a complete disregard for the law and instead, repeatedly engaged in violent and reckless behavior. A significant sentence is needed to protect the community from the danger Defendant poses and to impose upon him the seriousness of his actions.

I.  **FACTUAL BACKGROUND**

In July 2013, in Providence, Rhode Island, Defendant shot numerous rounds of bullets at and into the residence of his ex-girlfriend's grandmother.  Presentence Investigation Report ("PSR") ¶ 45.  Defendant was convicted of felony assault and discharging a firearm while committing or attempting to commit a crime of violence in Rhode Island state court.  *Id.*  He was sentenced to serve up to eight years and actually served over five years, and was subsequently released on probation.  *Id.* ¶¶ 13, 45.

While on probation for this shooting, in March 2020, Defendant was charged in Dorchester District Court with firearm, ammunition, and drug charges stemming from a search warrant execution at his home during which officers located a loaded firearm, a digital scale, marijuana, and cocaine residue.  *Id.* ¶ 51.  Defendant was released pretrial on electronic monitoring.  *Id.* ¶ 7.

Several months later, the U.S. Marshals Service (USMS) received a request from the Rhode Island Violent Fugitive Task Force regarding Defendant, who was wanted for violating terms of his ongoing probation arising out of his felony assault shooting.  *Id.*

On August 7, 2020, agents from USMS and the Boston Police Department gathered to search for Defendant and, as he was still on pretrial electronic monitoring in connection with his Dorchester District case, learned from the state electronic monitoring office that he was in the area of Allstate Road in Boston, Massachusetts.  *Id.* ¶ 8.  Agents, who had with them a booking photograph of Defendant, drove to the area and at approximately 10:30 a.m., observed Defendant and a woman sitting on a bench at the South Bay shopping mall area on Allstate Road.  *Id.*

As agents approached Defendant, and before they told him they were there to arrest him, Defendant told the woman "they about to arrest me." *Id.* ¶ 9. Agents showed Defendant the booking photograph, and Defendant said "that's me, Kenji, yes." *Id.*

Immediately thereafter and before agents made any substantive statements explaining why they were there, Defendant stated that he had been "about to call you guys…I found a gun over there in the trash." *Id.* Agents handcuffed and frisked Defendant and found a firearm loaded with five rounds of ammunition in his waistband. *Id.* ¶¶ 10, 12.

During his arrest, Defendant continued to tell law enforcement he was "about to call" them and had found the firearm on the ground at some point during his walk from his house to Dunkin' Donuts to the bench at South Bay shopping mall. *Id.* ¶ 11. The subsequent investigation, including camera footage from the area (including the trash and other areas around the Dunkin' Donuts) found no evidence to support Defendant's claim. *Id.*

Asked if he had a license to carry in Massachusetts, Defendant responded "why would I have a license to carry if I can't have a gun." *Id.*

The firearm was subsequently determined by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) to be a Charter Arms .44 Caliber Special Bulldog Pug, loaded with five rounds of .44 Smith & Wesson ammunition. *Id.* ¶ 12. ATF's query revealed that the firearm was reported stolen out of Indiana in 1997, and that the ammunition was manufactured outside of Massachusetts. *Id.* Defendant is prohibited from possessing firearms and ammunition based on his prior felony convictions, including the above-mentioned felony assault. *Id.* ¶ 13.

Defendant was charged in South Boston District Court with firearm, ammunition, and fugitive charges. *Id.* ¶ 71. On September 30, 2020, Defendant was indicted in this Court with

one count of felon in possession of firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1),[1] to which he pleaded guilty on May 2, 2023.  *Id.* ¶ 2.

## II. ADVISORY SENTENCING GUIDELINES

The government agrees with the U.S. Probation Office that Defendant's adjusted offense level is 13, based on a base offense level of 14 because he was a prohibited person at the time he committed the instant offense (USSG § 2K2.1(a)(6)(A)); a two-level increase because the firearm Defendant possessed was stolen (USSG § 2K2.1(b)(4)(A)); and a three-level decrease because he has accepted responsibility for his crime (USSG § 3E1.1).  *Id.* ¶¶ 18-27.  With a total offense level of 13 and a criminal history category of IV, the government agrees that the advisory guideline sentencing range ("GSR") is 24-30 months.[2]  *Id.* ¶¶ 49, 97.

## III. SENTENCING FACTORS

In determining a defendant's sentence, the Court must first consider the Sentencing Guidelines and determine the advisory guideline sentencing range, which, once calculated, establishes the Court's "starting point" or "initial benchmark."  *Gall v. United States*, 552 U.S. 38, 50 (2007).  Next, the Court should consider the factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts presented.

---

[1] The state charges out of South Boston District Court were *nolle prossed* after Defendant was federally indicted.  PSR ¶ 71.

[2] The government notes that while Defendant's GSR is now 24-30 months, at the time Defendant committed the instant offense, he had another felony conviction for drug charges out of Dorchester District Court.  PSR ¶ 66 (possession of and possession with intent to distribute Class B).  Approximately two months ago, on May 3, 2023, the prosecution was *nolle prossed* as the controlled substance was "purportedly tested by Annie Dookhan and is presumptively tainted."  Exhibit 1 (*Commonwealth v. Kenji Ingram*, Dkt. #0907CR001739, *Nolle Prosequi*).  Had that conviction remained in place, Defendant's GSR for the instant offense would have been higher.

Here, consideration of the § 3553(a) factors supports a 30 month sentence of imprisonment followed by three years of supervised release.

    a.   <u>Nature and Circumstances of Offense</u>

The nature and circumstances of Defendant's crime are extraordinary and demand a significant sentence. Defendant possessed a loaded firearm in broad daylight in a busy commercial shopping area, not only while on pretrial release and electronic monitoring for state firearm and drugs charges, but also while on probation for his violent felony assault conviction after having just served over five years in prison for such.[3]

Defendant knew that what he was doing was illegal, and he did it anyways. There is perhaps no clearer illustration of this than Defendant's own words to law enforcement: "why would I have a license to carry if I can't have a gun." Yet knowing he was legally prohibited from possessing a gun, Defendant chose to calmly sit on a bench in the middle of a busy commercial shopping center[4] with a loaded firearm concealed in his waistband, thereby seriously endangering numerous innocent bystanders. Actions speak louder than words, and Defendant's claims that he was "about to call" law enforcement to report that he had "found" a firearm simply do not hold water, let alone that they are entirely unsupported by the evidence and legally irrelevant. The danger Defendant poses to the community cannot be overstated.

---

[3] Additionally, as noted above, at the time Defendant possessed the loaded firearm, he had another state felony conviction for drug charges, thus putting him on even further notice that he was a prohibited person. *See* PSR ¶ 66.

[4] South Bay shopping center is home to upwards of a dozen retail stores and restaurants, including heavily patroned stores such as Target, The Home Depot, Best Buy, and Stop & Shop. *See* South Bay, "Retailers," *available at* https://bostonsouthbay.com/retailers/.

b.  Defendant's Criminal History

The instant offense is merely the latest in Defendant's long pattern of criminal conduct. The sheer number of Defendant's convictions and arrests is striking. As an adult, Defendant has amassed over fifteen convictions and CWOFs, been incarcerated numerous times, and repeatedly violated probationary conditions. Moreover, his criminal behavior started at least as early as age 15 and has continued now into his mid-40s. No longer can we assume that Defendant will mature or grow out of such dangerous and violent behavior.

One of the most striking instances of Defendant's perilous and reckless behavior is the 2013 felony assault that ultimately led to the instant offense. There, demonstrating his complete disregard for human life and the safety of others, Defendant fired several rounds into and at the residence of his ex-girlfriend's grandmother. *Id.* ¶ 45. Projectiles were recovered from inside a bedroom, a vehicle, and in front of the residence. *Id.* For his brazen and dangerous acts, Defendant was sentenced to a significant sentence of eight years, of which he actually served over five. *Id.* ¶¶ 13, 45. But as discussed below, even that sentence did not deter him from continuing to engage in criminal conduct.

The 2013 shooting was not the first time Defendant demonstrated his violent nature. His lengthy criminal history includes numerous violent assaults dating back to age 17. *See, e.g.*, *id.* ¶ 41 (2009 assault and battery conviction; Defendant punched and kicked another male); *id.* ¶ 40 (2005 assault and battery conviction; Defendant pushed his mother to the ground); *id.* ¶ 39 (2003 assault conviction; Defendant swung his arm and fist at female who was the subject of one of his multiple Abuse Prevention Order violation convictions, see below); *id.* ¶ 34 (1999 assault and battery on a police officer conviction); *id.* ¶ 32 (1995 armed robbery and larceny from a person

6

convictions; Defendant and co-conspirator hit victim in head with wooden club); *id.* ¶ 31 (1995 assault and battery on a police officer conviction).

Moreover, Defendant has been convicted three times for violating the Abuse Prevention Act, *see id.* ¶¶ 37, 38, 42 (2003 conviction, 2003 conviction during which Defendant pushed victim who had active restraining order against Defendant against building and attempted to strike officer during booking, and 2012 conviction), and was charged with such on five other occasions. *Id.* ¶¶ 57, 60, 68, 69, 70.

Defendant's record contained numerous other arrests, and he currently faces pending drug charges in Dorchester District Court. *Id.* ¶ 51.

Defendant's relentless history of violence, involvement with firearms, and other criminal behavior demands a substantial period of incarceration.

      c. <u>Need to Promote Respect for the Law, Afford Deterrence, and Protect the Public</u>

It was in the face of this extensive criminal record that Defendant once again engaged in dangerous criminal behavior. His actions make overwhelmingly clear that a significant sentence of imprisonment is needed to deter him from continuing to commit crimes, promote respect for the law, and protect the public from future crimes by Defendant.

Despite having served significant time in prison for committing a violent, dangerous shooting, and while on probation for that crime *and* while on pretrial release for state firearm and drugs charges, Defendant decided to again ignore the law and unlawfully possess a loaded firearm in a busy public area. He was not deterred by his prior felonies, nor his numerous prior sentences of incarceration, nor the fact that he was being electronically monitored, nor the fact that he was supposed to be conducting himself in a lawful manner under the watching eyes of not one, but two, state court systems.

Put simply, Defendant has time and again demonstrated a complete and utter disregard for the rule of law, the safety of the community, or court-ordered probation or pretrial release conditions. Far from taking advantage of the numerous opportunities afforded to him to change or understanding the seriousness of his conduct, Defendant has continued to consistently commit dangerous violent crimes and remained undeterred. A message must be sent to Defendant and others similarly situated that he must conform his conduct to the law.

Accordingly, to adequately punish Defendant, deter him and others from similar offenses in the future, protect the public, and promote respect for the law, a significant sentence of imprisonment is necessary.

## CONCLUSION

For all of the foregoing reasons, and in light of the advisory GSR, the factors enumerated in 18 U.S.C. § 3553(a), and the reasons to be offered at sentencing, the government respectfully recommends that the Court impose a sentence of incarceration of 30 months, followed by three years of supervised release.

                                        Respectfully submitted,

                                        JOSHUA S. LEVY
                                        Acting United States Attorney

                                    By: /s/ Sarah B. Hoefle
                                        Sarah B. Hoefle
                                        Assistant United States Attorney

Dated:  August 7, 2023

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                    */s/ Sarah B. Hoefle*
                                                    Sarah B. Hoefle
                                                    Assistant United States Attorney

Date:  August 7, 2023